CAMPANELLI, Respondent, vs. THE MILWAUKEE ELECTRIC RAILWAY & TRANSPORT COMPANY, Appellant.

*February 10—March 9, 1943.*

506

For the appellant there was a brief by *Shaw, Muskat &
Paulsen* of Milwaukee, and oral argument by *Carl Muskat*.

*Jesse J. Habush,* attorney, and *A. W. Richter* of counsel,
both of Milwaukee, for the respondent.

MARTIN, J.   At 1:40 p. m. on May 20, 1940, defendant's
trackless trolley car was northbound on North Milwaukee
street, an arterial highway.   Plaintiff's Chevrolet truck was
eastbound on East Knapp street.   The collision out of which
this action arises occurred in the intersection of said streets.
North Milwaukee street is thirty-five and four-tenths feet
wide between curbs south of East Knapp street, and thirty-
four and eight-tenths feet wide between curbs north of East
Knapp street.   East Knapp street is fifty feet wide between
curbs on the west side of North Milwaukee street, and forty-
nine and seven-tenths feet wide between curbs on the east side
of North Milwaukee street.   There is a sharp upgrade in East
Knapp street immediately west of the intersection.

There is a stop sign on the south side of East Knapp street
twenty-one and three-tenths feet from the west curb of North
Milwaukee street.   There was a conflict in the evidence as to
whether plaintiff stopped his truck before entering the inter-
section.   That issue was vigorously contested at the trial, and
the jury found that plaintiff's truck came to a full and com-
plete stop within thirty feet of the west curb line of North
Milwaukee street.   That finding is amply supported by the
evidence.

The jury found the operator of defendant's trolley car
causally negligent as to the rate of speed at which he operated
the trolley car as he entered the intersection, and as to the
manner in which he controlled the movement of the trolley

car after it entered the intersection. Appellant contends that defendant's operator was free from negligence as a matter of law as to the rate of speed at which he operated the trolley car as it entered the intersection, and as to the manner in which he controlled the movement of said trolley car after it entered the intersection; and if not, the alleged negligence of the defendant was not a proximate cause as a matter of law. Appellant further contends that plaintiff's negligence was the sole cause or at least as great as, or greater than, any negligence on the part of the defendant.

While trackless trolley cars are not deemed motor vehicles within the meaning of chs. 85 and 194, Stats., sec. 193.01 (1), Stats., which is applicable, provides that the speed of such trackless trolley cars shall not exceed that at which motor vehicles may be lawfully operated in the same area. The maximum permissible speed at the time and place of the collision was twenty-five miles an hour. Sec. 85.40 (6).

Several witnesses testified that as defendant's trolley car approached the intersection it was traveling thirty to thirty-five miles an hour. The same witnesses testified as to the speed of the plaintiff's truck as it was traversing the intersection. Their testimony varied between five and twelve miles per hour.

The photographs received in evidence show that the trolley car hit plaintiff's truck approximately over the right rear wheel. When the impact occurred the front of plaintiff's truck was at a point approximately four or five feet west of the east curb line of North Milwaukee street—the east boundary of the intersection. The truck was traveling four or five feet north of the south boundary line of Knapp street. When defendant's car came to a stop after the collision the front end was at a point approximately ten feet south of the north boundary line of Knapp street. The operator of defendant's car testified that when he first saw plaintiff's truck it was about

thirty feet west of the west curb of North Milwaukee street; that then the front of the trolley car was about forty feet south of the south curb of Knapp street. He further testified that from the time he first saw plaintiff's truck until the collision took place the truck did not stop; that it was traveling about twenty-five miles an hour. He further testified that the trolley car was going about twenty-five miles an hour; that he applied the brakes and sounded the horn. The plaintiff testified that he stopped before entering the intersection; that the trolley car was then about one hundred twenty-five feet south of Knapp street. He also testified that the trolley car was then about "half a block away" (which would be approximately one hundred ninety-seven feet). He concluded that he had time to get across the intersection ahead of the trolley car.

Appellant argues that if there were any negligence on the part of the operator of its car as to speed, such speed was not a legal cause of the accident because the plaintiff would have driven his truck in front of the oncoming trolley car, under the circumstances, at whatever speed the car was traveling. Upon the evidence the jury might well conclude that if the trolley car had been traveling at a lawful speed, plaintiff's truck would have cleared the intersection and the collision would not have occurred.

The jury found plaintiff negligent as to the manner in which he controlled the movement of his truck after he entered the intersection. The jury may have concluded that plaintiff was negligent in not stopping his truck after he had entered the intersection and before invading the east half, or in not increasing his speed so as to have cleared the intersection before the trolley car entered it. The jury might also have concluded that the operator of the trolley car was negligent in not passing to the rear of the truck, thus avoiding the collision. There is no evidence of other vehicles being in the intersection at the time. We cannot say that there is no credible evidence

to sustain the findings of the jury as to negligence and causation as to both plaintiff and the operator of defendant's trolley car.

Appellant contends that in any event the negligence of the plaintiff was as great as, or greater than, the negligence of the trolley-car operator. This court has many times held that no rule of thumb can be laid down with respect to the apportionment of negligence between a plaintiff and a defendant. *Fronczek v. Sink,* 235 Wis. 398, 400, 291 N. W. 850, 293 N. W. 153. In *Hansberry v. Dunn,* 230 Wis. 626, 633, 284 N. W. 556, the court said:

"It is true that the court may occasionally be able to determine from the record that two items of negligence of the same character are equal in quality or that as a matter of law one of them is greater than the other. This is more apt to be possible in cases where speed, lookout, or the violation of some particular rule of the road is involved. It is less apt to be possible in cases involving findings of negligence with respect to management and control. In any event, it must be possible from all the circumstances of the case as disclosed by the record for this court to be able to say that the negligences are equal in quality and that is why this court has said that it can rarely come to this conclusion. We are satisfied, however, that the court may not adopt a rule of thumb that will check off automatically lookout against lookout, control against control, etc., holding these items equal as a matter of law in every case."

In the instant case, as above alluded to, there was a sharp issue as to whether plaintiff failed to come to a full and complete stop within thirty feet of the west curb line of North Milwaukee street. Much of the testimony in the record was directed to that issue. The jury found against defendant's contention. Plaintiff was found not negligent as to speed as he entered the intersection. The operator of defendant's car was found negligent as to speed as he entered the intersection. Both parties were found negligent as to the manner in which

they controlled the movement of their respective vehicles after they entered the intersection. The jury apportioned the negligence thirty-three and one-third per cent to the plaintiff and sixty-six and two-thirds per cent to the defendant. We cannot say as a matter of law, upon the evidence in this case, that the negligence of the parties was equal.

Appellant contends that the trial court, in its decision on the motions after verdict, applied the wrong rule of law as to trackless trolley cars; that is, that the court applied secs. 85.18 (4) and 85.18 (1), Stats., which relate to the operation of automobiles; that the court should have applied the provisions of sec. 193.01 (1), which relates to the operation of railroads and applies to trackless trolley-car operation. In its decision the trial court said:

"Apparently the bus [trolley car] driver's conduct was based on the idea that as he was on an arterial street he had the right of way, and that any other vehicle on an intersecting street must yield to him regardless of the fact that such other vehicle had already entered the intersection. Operators on arterial streets do not possess exclusive or unrestricted rights. If the driver on the intersecting street has obeyed the law and made a 'full and complete stop' at the proper place as here found, the provisions of section 85.18 (4), Wis. Stats., apply. In this case the plaintiff was, as stated, admittedly first in the intersection. In any event any right of way that the bus driver may have had was forfeited by reason of his driving at an unlawful speed. Sec. 85.18 (1), Wis. Stats."

Also the court said:

"The statutes governing the speed of trackless trolley cars are secs. 193.01 (1) (last sentence) and 85.40 (6), fixing a maximum permissible speed of twenty-five miles per hour."

While it is true that cars used for the operation of any such trackless trolley system shall not be deemed motor vehicles within the meaning of chs. 85 and 194, Stats., sec. 193.01 (1), Stats., provides:

". . . that the speed of such car [trolley car] shall not exceed that at which motor vehicles may be lawfully operated in the same area. . . ."

The trial court applied the correct rule as to the permissible speed of the trolley car. No claim is made that the court erred in its instructions to the jury, either as to the law applicable or in any other respect. There is credible evidence to sustain the findings of the jury. On the verdict plaintiff was entitled to judgment for two thirds of the damages assessed.

*By the Court.*—Judgment affirmed.